IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHARLES WILLIAMS, individually, )
CHARLES WILLIAMS, as Parent )
and Next Best Friend of K.W., a minor, )
)
                  Plaintiffs, )
)
vs. ) Case Number CIV-16-1008-C
)
CITY OF NORMAN, a political )
Subdivision, and GLENDA VASSAR, )
individually, )
)
                  Defendants. )

## MEMORANDUM OPINION AND ORDER

On September 18, 2015, Norman police were dispatched to an apartment in Norman, Oklahoma. When the first officer arrived at the apartment, he knocked on the door and announced he was with the Norman Police Department. He then heard a female call for help. The officer opened the door and observed Plaintiff, Charles Williams, on top of a female. The officer ordered Plaintiff Williams to get off the female and separated the two parties. He then began interviewing the individuals. The officer observed that a television had been knocked over and a chair in the kitchen had been knocked over.

The second officer to arrive on the scene was Defendant Glenda Vassar. As she was approaching the apartment, she could hear the female screaming and crying. When she reached the front door, she observed the female lying on the floor crying with her shirt pulled down exposing her breast. Defendant Vassar told the female to pull her shirt up and took her outside so that they could talk. The female advised Vassar that she and

Plaintiff Williams had been dating and that she lived in the apartment. The couple had had an argument and Plaintiff Williams grabbed her from behind, pushed her to the floor, and wrapped his arm around her throat and told her he could kill her. The female stated she could not breathe and thought she was going to pass out but that Plaintiff Williams let go before she did. She stated she was struggling the entire time and that Plaintiff Williams hit her in the face and in the eye, with either his hand or a flashlight. The female then stated they continued arguing and ended up in the living room where Plaintiff Williams got her down again and used his hands and started choking her and only stopped when the police arrived at the scene.

Plaintiff Williams told a different story. He informed one of the other officers that he and the female had been dating; that the female had had too much drink earlier in the night; an argument broke out; and that the female then began to destroy things around the apartment and that the Plaintiff was on top of her to keep her contained so she could not destroy anything else while he called the police.

Defendant Vassar also interviewed Plaintiff K.W. K.W. stated that she was sixteen years old and had lived with her dad (Plaintiff Williams) for the last two to three months and that the female had been living there for the last few weeks. K.W. acknowledged that the female and her father had argued earlier that night and that the female came into her room asking her to call the police, that Plaintiff had wrapped his arm around the female's arms and chest and dragged her out of the room, where they fell into the kitchen table. K.W. then saw Plaintiff drag the female into the living room, straddle her and hold her face

2

down. K.W. then went back into her bedroom and closed the door. Following this investigation, Defendant Vassar decided to place Plaintiff under arrest for domestic abuse and he was arrested. In time, the charges against Plaintiff Williams were dismissed.

Plaintiff Williams brought the present action pursuant to 42 U.S.C. § 1983 alleging that the actions of Defendant Vassar violated his constitutional rights and that the Defendant City of Norman violated his constitutional rights by failing to properly train or supervise its officers. Plaintiffs[1] also brought state law claims against Defendant City pursuant to the Oklahoma Governmental Tort Claims Act, arguing that it was negligent in its supervision, training, and retention of the individual officers. Defendants Vassar and City of Norman have filed Motions for Summary Judgment, asserting the undisputed material facts entitle them to judgment on the claims brought by Plaintiffs.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S.

---

[1] Plaintiff K.W.'s only claim is against Defendant City of Norman for negligent training, supervision and retention.

3

317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**DEFENDANT VASSAR**[2]

Defendant Vassar has raised qualified immunity as a defense to the claims brought against her. According to Defendant Vassar, Plaintiff Williams has failed to demonstrate any violation of his constitutional rights and even if he has, those rights were not clearly established. Plaintiff Williams defines the constitutional right at issue as wrongful arrest

---

[2] Plaintiffs have dismissed all claims against the other officers involved.

without probable cause. (Dkt. No. 34, p. 16.)[3] Because Defendant Vassar has raised the defense of qualified immunity, Plaintiff must "produce facts 'sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred.'" Bruning v. Pixler, 949 F.2d 352, 356 (10th Cir. 1991) (quoting Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988)). In order to state a claim for violation of the Fourth Amendment in this instance, Plaintiff must offer some evidence from which a reasonable jury could find that Defendant Vassar's decision to arrest Plaintiff was not based upon arguable probable cause. A defendant is entitled to qualified immunity from a false arrest claim if there was "arguable probable cause" to make an arrest. Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014). Thus, the question is, were Defendant Vassar's actions objectively reasonable even if mistaken. In arguing that Defendant Vassar did not act reasonably, Plaintiff points only to his own statement of the events occurring on the evening of the arrest. He argues that Defendant Vassar's failure to give adequate credence to his version rendered her actions unreasonable. However, this is not the appropriate standard. See Delmonico v. Capito, 356 F. App'x

---

[3] Although Plaintiff initially asserted a Fourteenth Amendment claim in his Second Amended Complaint, he now concedes that his only constitutional claim against the officers is based on the Fourth Amendment.

144, 149 (10th Cir. 2009) (noting that a witness's opinion does not necessarily defeat probable cause). Indeed, the Tenth Circuit has noted that law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). Here, even if the jury is to give full credence to Plaintiff's version of the events, at best that establishes that Defendant Vassar was mistaken in her belief that probable cause existed to arrest Plaintiff. Given the version of events given at the scene by the purported victim and K.W., the decision to arrest was objectively reasonable. Consequently, Defendant Vassar is entitled to qualified immunity and she is entitled to judgment on Plaintiff's claims against her.

**DEFENDANT CITY OF NORMAN**

Plaintiff Williams' § 1983 claim against Defendant City of Norman is based upon its alleged failure to train the Defendants. Before the City can be liable for inadequate training, the Plaintiff must show that the officers exceeded constitutional limitations; the alleged constitutional violation arose under circumstances that constitute a usual and recurring situation with which police officers must deal; inadequate training demonstrates a deliberate indifference on the part of the City toward persons with whom a police officer comes in contact; and there is a direct and causal link between the constitutional deprivation and adequate training. Allen v. Muskogee, Okla., 119 F.3d 837, 841-42 (10th Cir. 1997). Because the Court has determined that Defendant Vassar did not violate Plaintiff's constitutional rights, Plaintiff's § 1983 claim against the City necessarily fails.

See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), and Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993).

Plaintiffs appear to bring three state law-based tort claims against Defendants. First, that Defendant City was negligent in its hiring, training, and retention of the officers; that Williams' arrest was a false arrest; and that Defendants were negligent. As Defendant City notes in its reply brief, any negligence claim cannot stand, to the extent it is premised upon the arrest of Defendant Williams. A claim for false arrest is an intentional tort and therefore it cannot give rise to a claim for negligence. See Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19, ¶ 32, 356 P.3d 617, 629. To the extent Plaintiff K.W. sought to plead a negligence claim, she has simply failed to offer any facts, evidence, or law to demonstrate the existence of a claim that is recognized under the facts of this case. To the extent Plaintiff Williams seeks to pursue his false arrest claim against Defendant City of Norman, the Court's determination that Defendant Vassar acted with probable cause is fatal to that claim. See Christian v. State, 1985 OK CR 137, 708 P.2d 1133. Finally, to the extent Plaintiffs are trying to bring a negligent retention or hiring claim, the Oklahoma Governmental Tort Claims Act precludes such a claim. See Jackson v. Okla. City Pub. Schs., 2014 OK CIV APP 61, ¶ 9, 333 P.3d 975, 978-79.

## CONCLUSION

For the reasons set forth herein, the Qualified Immunity Motion for Summary Judgment (Dkt. No. 29) and City of Norman's Motion for Summary Judgment (Dkt. No. 30) are GRANTED. A separate judgment will issue.

IT IS SO ORDERED this 25th day of September, 2017.

ROBIN J. CAUTHRON
United States District Judge